Roseann C. HOLMAN, Administratrix of the Estate of Riley Jesse Holman, Jr., Deceased, as Administratrix and on her own behalf; Jami Holman and Tanya Holman, minor children or Riley Jesse Holman, Deceased, by Roseann C. Holman, their natural guardian, Plaintiffs,

v.

William Wayne WALLS, individually and as a Police Officer of the City of Dover; James Edward Kurtz, individually and as a Police Officer of the City of Dover; Mitch M. Hill, individually and as Police Officer of the City of Dover; Joe A. Klenoski, individually and as Police Chief of the City of Dover; City of Dover, Defendants,

and

Joe A. KLENOSKI, Defendant and Third-Party Plaintiff,

v.

Charles CASSELL, individually and as administrator of the Council on Police Training; James L. Ford, Jr., individually and as a member of the Council on Police training; Daniel L. Simpson, individually, as a member of the Council on Police Training and as Superintendent of the Delaware State Police; Joseph N. Pennell, individually and as a member of the Council on Police Training; John R. McCarnan, individually and as a member of the Council on Police Training; William M. Redd, individually and as a member of the Council on Police Training; William B. Keene, individually and as a member of the Council on Police Training; Nancy Tieman, individually and as a member of the Council on Police Training; W. Layton Johnson, individually and as a member of the Council on Police Training; and Charles M. Oberly, individually and as a member of the Council on Police Training, Third-Party Defendants.

Civ. A. No. 86–1 MMS.

United States District Court, D. Delaware.

Nov. 26, 1986.

**949**

A. Richard Barros, of Barros, McNamara & Scanlon, Dover, Del., for plaintiffs.

Myron T. Steele, of Prickett, Jones, Elliott, Kristol & Schnee, Dover, Del., for defendants Walls, Kurtz, Hill and City of Dover.

Nicholas H. Rodriguez, and William W. Pepper, of Schmittinger & Rodriguez, Dover, Del., for defendant and third-party plaintiff Klenoski.

Keith R. Brady, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for third-party defendants Ford, Pennell, McCarnan, Redd, Keene, Tieman, Johnson, Oberly, Cassell and Simpson in their official capacities.

Roger A. Akin, and Bruce C. Herron, of Sawyer & Akin, P.A., Wilmington, Del., for third-party defendants Cassell and Simpson in their individual capacities.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Before the Court are two motions to dismiss a third-party complaint arising out of an action against certain police officers and the police chief of the City of Dover, Delaware, and the City itself, brought under 42 U.S.C. § 1983. Pursuant to Fed.R. Civ.P. 14(a), defendant Chief of Police Joe A. Klenoski has impleaded as third-party defendants the administrator and members of the Council on Police Training of the State of Delaware in their individual capacities and official capacities, and in the case of Council member Daniel L. Simpson, also in his official capacity as Superintendent of the Delaware State Police. For the reasons that follow, the third-party defendants' motions to dismiss will be granted.

## I. FACTS

The parties to the third-party action do not dispute the underlying facts. On the morning of June 21, 1985, Riley J. Holman, plaintiffs' decedent, went to the office of a Dover dentist to receive dental treatment. While at the dentist's office, Holman apparently decided not to undergo treatment and secluded himself in an operatory room. When the dentist noticed that Holman was holding a penknife, he cleared all persons from his office and called the 911 emergency telephone number to report that a disturbed person with a penknife was in his office at 1071 South Governors Avenue.

Thereafter, an officer of the Delaware State Police notified the Dover City Police Department of the problem. Dover police officers William Walls and Mitch Hill were dispatched to the scene, and Dover police officer James Kurtz also responded to the call. When the three officers arrived at 1071 South Governors Avenue, they were just outside the jurisdictional boundaries of the City of Dover.

The police officers briefly questioned the dentist outside of his office and learned that Holman was alone inside. They then entered and searched the office and located the operatory room in which Holman had secluded himself with a penknife. After once requesting Holman to leave the operatory room, the officers attempted to force open the door of the room. Holman finally emerged through the door, carrying the penknife. The police officers fired fourteen shots at Holman, striking him twelve times and killing him.

On January 2, 1986, plaintiffs Roseann, Jami and Tanya Holman filed a complaint

under 42 U.S.C. § 1983 against Officers Walls, Kurtz, and Hill, Chief of Police Klenoski, and the City of Dover, alleging violations of Riley Holman's Fifth and Fourteenth Amendment rights. On March 7, 1986, Chief Klenoski filed a third-party complaint, pursuant to Fed.R.Civ.P. 14(a), against the administrator and members of the Council on Police Training in their individual and official capacities, and against Council member Simpson in his official capacity as Superintendent of the Delaware State Police as well. Count I of the third-party complaint alleges that Klenoski is entitled to indemnification or contribution from the third-party defendants because of their breach of a duty to provide proper and adequate training to Officers Walls, Hill, and Kurtz. Count II of the third-party complaint alleges that Klenoski is entitled to indemnification or contribution from third-party defendant Simpson because of Simpson's breach of a duty to supervise and control the defendant police officers.

Affidavits filed in the case reveal that Officer Walls was serving as a full-time Dover police officer on July 11, 1969, and thus was not required to receive mandatory training under the Delaware police training program. *See* 11 *Del.C.* § 8405(b). Although Officers Hill and Kurtz received mandatory training between March 2 and May 21, 1981, third-party defendants Simpson, Charles W. Cassell, Charles M. Oberly, James L. Ford, Joseph N. Pennell, William M. Redd, and Nancy Tieman were at that time in no way associated with the Council on Police Training.[1]

## II. MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

### A. Standard of Review

■ Third-party defendants have moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. The parties, however, have referred to matters outside of the pleadings. Rule 12(b) therefore requires that the motion to dismiss be treated as one for summary judgment and disposed of as provided in Fed.R.Civ.P. 56.

Rule 56(c) permits a court to render summary judgment if it is "show[n] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nevertheless, "when a motion is made and supported, the nonmoving party must produce specific facts showing that there is a genuine issue for trial, rather than resting upon the assertions of pleading." *Jersey Central Power & Light Co. v. Township of Lacey,* 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986); *see Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Assertions in the form of legal conclusions are insufficient to create issues of material fact that would preclude summary judgment. *Securities & Exchange Comm'n v. Bonastia,* 614 F.2d 908, 914 (3d Cir.1980).

### B. Choice of Law

Under Fed.R.Civ.P. 14(a), a defendant may implead "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Third-party plaintiff Klenoski seeks contribution or indemnity from the third-party defendants in the event he is found liable under § 1983 to the primary plaintiffs. The threshold issue before the Court is whether state or federal law governs the third-party action.

Generally, where the third-party claim is not based on a theory of federal law, the right to contribution or indemnity is determined under applicable state law, even if the main action is based on federal question jurisdiction. Where the third-party

1. Third-party defendants John McCarnan, William B. Keene, and W. Layton Johnson were Council members when Officers Hill and Kurtz received mandatory training.

claim is based on a theory of federal law, however, federal law governs the right to contribution or indemnity. 3 J. Moore, *Moore's Federal Practice* ¶ 14.03[3]; *see Kennedy v. Pennsylvania R.R. Co.,* 282 F.2d 705 (3d Cir.1960).

On its face, the third-party complaint appears to articulate a theory of liability based solely on Delaware law, although the main § 1983 action is covered by federal question jurisdiction. *See* 28 U.S.C. § 1343. Count I of the third-party complaint alleges that the third-party defendants had a duty, imposed by Delaware statutes, to provide proper and adequate training to the defendant police officers, and that they breached this state law duty by "negligently, recklessly or wantonly" failing to provide such training. Similarly, Count II of the third-party complaint alleges that third-party defendant Simpson had a duty, also imposed by Delaware statutes, to supervise and control the defendant police officers, and that he breached this duty by "negligently, recklessly or wantonly" failing to provide proper and adequate supervision.[2] The complaint alleges no violations of duties imposed by federal law.[3]

■ On the other hand, the gravamen of the complaint may be that the third-party defendants, because Delaware law imposed on them a duty to train and/or supervise, were the state actors responsible for the violation of Riley Holman's rights under the Constitution. The third-party claim thus would be derivative of the main § 1983 action and governed by federal law. In light of the decided cases and the policies underlying adjudication of § 1983 claims, however, I hold that state law controls the third-party action.

Cases such as *Kennedy v. Pennsylvania R.R. Co.,* 282 F.2d 705 (3d Cir.1960), illustrate the principle that state law often controls third-party claims even where they arise out of actions governed by federal

law. In *Kennedy,* an injured railroad employee brought suit under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.,* against a railroad, and the railroad impleaded a steel manufacturer for contribution or indemnity. The Third Circuit Court of Appeals noted that the employee's contributory negligence did not bar his recovery under the federal statute. The Court held, however, that state tort law governed the third-party action, and where the employee was negligent it precluded a finding that the steel manufacturer was liable to the railroad. 282 F.2d at 708–09; *see also Cazad v. Chesapeake & Ohio Ry. Co.,* 622 F.2d 72, 75 (4th Cir.1980) (third-party action for contribution or indemnity arising out of FELA claim was controlled by state law governing liability of owners and occupiers of land); *Brown v. UAW,* 85 F.R.D. 328, 334 (W.D.Mich.1980) (third-party action for contribution or indemnity arising out of National Labor Relations Act claim was controlled by state contract and fiduciary law); *cf. County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (cross-claim for indemnification arising out of action under 1793 Nonintercourse Act raises a question of state law).

In other cases, claims for contribution or indemnity arising out of actions governed by federal law are controlled by federal law. In *Denicola v. G.C. Murphy Co.,* 562 F.2d 889 (3d Cir.1977), a class of employees sued their employer and union for violations of Title VII of the Civil Rights act of 1964, 42 U.S.C. §§ 2000e *et seq.* The employees and the employer subsequently agreed to a cash settlement. The settlement agreement apportioned part of the employer's payment to the Title VII claim and part to violations of the Equal Pay Act, 29 U.S.C. §§ 201 *et seq.,* not alleged in the original complaint. The employer cross-claimed against the union for contribution on the Equal Pay Act portion of the em-

---

**2.** The arguments supporting the allegations in the third-party complaint are discussed *infra.*

**3.** Indeed, the third-party complaint specifically seeks to have the Court invoke its ancillary

jurisdiction over the third-party claim, in effect suggesting that independent federal question jurisdiction over the claim does not exist. *See* 3 J. Moore, *Moore's Federal Practice* ¶ 14.26.

ployees' recovery. 562 F.2d at 891–92 & n. 3.

The Third Circuit Court of Appeals held that federal law governed the claim for contribution,[4] distinguishing cases in which the main action was governed by the FELA. The Court noted that in the FELA cases, "contribution is based upon duties and liabilities having their origin in state law" and "duties owed to plaintiffs by third persons are still regulated by the substantive law of the state." *Id.* at 895 (citing *Kennedy*). In *Denicola*, however, the Equal Pay Act, and not analogous state law, expressly governed the conduct of the union toward the employees. *Id.; see also Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3d Cir.1980) (federal law governs the right to contribution from codefendants under Title VII), *vacated on other grounds*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981). Federal law may thus govern a third-party action for contribution or indemnity where plaintiffs could have brought their federal claim against the third party as a primary party defendant in the main action.

Courts have generally found that state law governs third-party claims arising out of § 1983 actions in two factual scenarios. The first and more straightforward is where the plaintiff could not have made the third party a primary party defendant in the § 1983 suit without attaching pendent state law claims. For example, the defendant officials may implead a private party, not acting under color of state law, whose conduct is alleged to be a contributing cause of the plaintiff's injury. *See Banks v. City of Emeryville*, 109 F.R.D. 535 (N.D.

Cal.1985) (§ 1983 suit following death of plaintiff's decedent in jail cell fire; defendants implead mattress manufacturer; court applies state law to third-party claim); *but see Valdez v. City of Farmington*, 580 F.Supp. 19 (D.N.M.1984) (plaintiff sues under § 1983 for arrest using unlawful and excessive force; defendants attempt to implead private person as joint or primary tortfeasor; court holds without elaboration that question "is one of federal common law, not one governed by reference to the law of the forum state"). Where the defendant officials bring a third-party action for indemnification against their insurance carrier, courts invariably apply state law. *See Colton v. Swain*, 527 F.2d 296 (7th Cir.1975) (applying Illinois law to third-party claim); *Engsberg v. Town of Milford*, 597 F.Supp. 251 (W.D.Wis.1984) (applying Wisconsin law to third-party claim).

The second and more difficult factual scenario is where the plaintiff could have brought a § 1983 suit directly against the third-party defendant, a state actor, for violating the plaintiff's constitutional rights.[5] Third-party claims in such cases, like the third-party claim before this Court, may be said to be derivative of the main § 1983 action. Nevertheless, in resolving them courts have applied analogous state law, rather than relying on federal law to establish the defendants' right to contribution or indemnity. *See Sager v. City of Woodland Park*, 543 F.Supp. 282 (D.Colo. 1982) (§ 1983 suit against police chief and city alleging inadequate training and supervision of police officers; defendants implead another city whose training academy

---

**4.** Although the union in *Denicola* was an original party to the suit, plaintiffs had not asserted an Equal Pay Act claim against it. 562 F.2d at 892 n. 3. The employer's cross-claim under Fed.R.Civ.P. 13(g) was therefore closely analogous to a third-party claim under Fed.R.Civ.P. 14(a).

**5.** This situation should be distinguished from cases in which the plaintiff did in fact sue under § 1983 the party against whom contribution or indemnity is sought. In the latter cases, courts have uniformly applied federal law to determine the existence of a right to contribution or indemnity among codefendants, and have

reached differing conclusions as to whether federal common law provides such a right. *See, e.g., Miller v. Apartments & Homes, Inc.*, 646 F.2d 101 (3d Cir.1981); *Johnson v. Rogers*, 621 F.2d 300 (8th Cir.1980). Under *Miller*, courts in the Third Circuit must permit contribution in § 1983 cases as a matter of federal common law, notwithstanding the doubt cast by the Supreme Court's intervening decision in *Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (no federal common law right to contribution from codefendants under Title VII). *See Fishman v. DeMeo*, 604 F.Supp. 873 (E.D.Pa.1985).

the police officers attended; court applies state law to third-party claim); *Testa v. Winquist*, 451 F.Supp. 388 (D.R.I.1978) (§ 1983 suit against police officers for false imprisonment; defendants implead police officer in another city for negligently supplying inaccurate information; court applies state law to third-party claim).

■ In the case before this Court, the responsibility of the third-party defendants for the death of Riley Holman can be determined wholly by reference to Delaware law.[6] Thus, there is no reason under the facts of this case to extend the reach of federal law under § 1983 beyond the main action. *Cf. Daniels v. Williams*, — U.S. —, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986); *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976) (cautioning against making § 1983 "a font of tort law to be superimposed upon whatever systems may already be administered by the States"). The goals of the civil rights statutes, which are generally concerned more with the compensation of plaintiffs than with the distribution of liability among possible defendants, are not disserved by this result. *See Carey v. Piphus*, 435 U.S. 247, 254–55, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978). Moreover, the application of state law to the third-party action acknowledges the limited lawmaking competence of federal courts and thus vindicates the policies that also mandate the use of state law in diversity cases. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## C. Eleventh Amendment Immunity

■ The Eleventh Amendment bars a suit in federal court that seeks to impose a liability that must be paid from public funds in the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Although the Amendment by its terms does not bar suits against a state by its own citizens, the Supreme Court has long held that a state is immune from suits brought in federal courts by its own citizens as well as by citizens of another state.[7] *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Moreover, even though a state is not named a party to the action, the Eleventh Amendment may nevertheless bar the suit. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945). In light of this well-established line of precedent, third-party plaintiff Klenoski's claim against the administrator and members of the Council on Police Training in their official capacities must be dismissed.

Suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55, 98

---

**6.** Given this conclusion, the Court has no difficulty deciding that it has ancillary jurisdiction over the nonfederal third-party claim. First, the main claim and the third-party claim arise from the same occurrence and from a "common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Second, like all third-party claims asserted pursuant to Fed.R.Civ.P. 14(a), the nonfederal claim in this case is logically dependent on the outcome of the main action, and has been asserted by a party "haled into court against his will." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978); *see Finkle v. Gulf & Western Mfg. Co.*, 744 F.2d 1015 (3d Cir.1984). Because of this second factor, the cases relied on by the third-party defend-

ants, all involving pendent claims by plaintiffs, are inapposite.

**7.** Third-party plaintiff urges this Court to turn its back on the settled proposition that the Eleventh Amendment bars suit against a state by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Employees v. Department of Pub. Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although four justices of the Supreme Court favor overturning the rule of *Hans*, see *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 3150, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting), it remains binding on the lower federal courts.

S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Indeed, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself" rather than to the official's personal assets. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The Eleventh Amendment bar thus extends to suits for damages against state officials in their official capacity. *Id.* at 3107. A state's Eleventh Amendment immunity extends as well to third-party claims for contribution or indemnity that fall within a federal court's ancillary jurisdiction. The Supreme Court has stated:

> The Eleventh Amendment forecloses, however, the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State.... "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment."

*County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 251, 105 S.Ct. 1245, 1260, 84 L.Ed.2d 169 (1985) (quoting *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984)). The claim against the third-party defendants in their official capacities will therefore be dismissed.

### D. Immunity Under the Delaware Tort Claims Act

The Delaware Tort Claims Act, 10 *Del.C.* §§ 4001 *et seq.,* bars claims for damages against the state or its employees, including "members of any board, commission or agency of the State," where:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence.

10 *Del.C.* § 4001.[8] Thus, "public officials are exempt from suit under section 4001 when performing official duties involving the exercise of discretion and when performed in good faith and without gross or wanton negligence." *Smith v. New Castle County Vocational-Technical School Dist.,* 574 F.Supp. 813, 821 (D.Del.1983). Section 4001 further provides that in an action against the state or its employees "the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity." [9]

The functions performed by the administrator and members of the Council on Police Training and by Superintendent Simpson plainly fall within the ambit of section 4001(1). Council members are empowered, *inter alia,* to establish minimum qualifications for applicants as police officers, to establish minimum educational and training qualifications requisite to permanent appointment as a police officer, to

---

**8.** Section 4001 confers absolute immunity on the Attorney General from claims "founded upon an act or omission arising out of the performance of an official duty." The third-party claim against Attorney General Charles M. Oberly, a member of the Council on Police Training as required by 11 *Del.C.* § 8402, must therefore be dismissed.

**9.** Although this Court need not apply state pleading rules, the burden of proof section 4001 imposes "would require a plaintiff to allege specific circumstances that would support the absence of one or more of the three statutory criteria for immunity" to withstand a motion to dismiss in Delaware state courts. *Vick v. Haller,* 512 A.2d 249, 252 (Del.Super.Ct.), *aff'd without op.,* 514 A.2d 782 (Del.1986).

prescribe standards for inservice or continued training of police officers, and to establish minimum training requirements, attendance requirements and standards of operations for police training schools. 11 *Del.C.* § 8404(a). The Superintendent of the State Police is in charge of officers whose primary duty is to enforce the state's highway laws. 11 *Del.C.* § 8301. All of these functions involve the exercise of discretion, including "determination of policy" and "enforcement of statutes, rules or regulations" under section 4001(1). *Cf. Dodge v. Stine*, 739 F.2d 1279, 1283–84 (7th Cir.1984) (interpreting Wisconsin tort claims statute).

The third-party complaint alleges that the third-party defendants "negligently, recklessly or wantonly" failed to provide adequate training and supervision to the defendant police officers. If so, section 4001(3) would render the third-party defendants ineligible for the protections of the Tort Claims Act. However, no specific facts or circumstances that would support this assertion have been alleged.[10] The third-party defendants, on the other hand, have introduced affidavits into the record essentially asserting that they have fulfilled their responsibilities in good faith and without gross or wanton negligence. *See* Appendix to Opening Brief in Support of

Third-Party Defendants' Motion to Dismiss, Dkt. 26A, at 1–22. In addition, the third-party defendants have placed in the record materials describing in detail the Delaware State Police Training Academy curriculum, which they now cite as support for their assertions of good faith and due care. *See* Response of Defendants Cassell and Simpson to Plaintiffs' Request for Production, Dkt. 52.

■ As noted above, reference to matters outside of the pleadings converts a motion to dismiss into one for summary judgment. Fed.R.Civ.P. 12(b). Although the third-party defendants have supported their motion, third-party plaintiff Klenoski continues to rest upon the conclusory assertions of the pleadings, and has thus failed to create a genuine issue of material fact. *See Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986); *Securities & Exchange Comm'n v. Bonastia*, 614 F.2d 908, 914 (3d Cir.1980). Immunity under the Delaware Tort Claims Act is therefore grounds for dismissal of the third-party complaint.[11]

10. *Cf. Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir.1976) ("In this circuit, plaintiffs in civil rights cases are required to plead facts with specificity."); *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir.1973) ("conclusory allegations, such as 'intentionally, wilfully and recklessly,' without supporting facts are not sufficient to make out a complaint under 42 U.S.C. § 1983"), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974).

11. Although I have held that state law governs the third-party claim, the doctrine of qualified immunity developed by the federal courts and applied to executive and administrative officials under § 1983 would also protect the third-party defendants. The federal qualified immunity standard is essentially objective: "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that "[e]ven if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Id.* at 2816. As noted in the text, third-party plaintiff Klenoski has failed to come forward with evidence that the third-party defendants knew or should have known that their acts or omissions would violate constitutional rights.

It should be noted that although *Harlow* and *Mitchell* involved suits against federal officers directly under the Constitution, the standards enunciated apply equally to suits against state officials pursuant to § 1983. *Harlow*, 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30; *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978).

## E. The Council's Duty to Train

■ Count I of the third-party complaint alleges that Chief Klenoski is entitled to indemnification or contribution from the administrator and members of the Council on Police Training because of their breach of a duty to provide proper and adequate training to the defendant police officers. The third-party defendants argue that they were under no such duty.[12] Because an analysis of the relevant statutes indicates that no duty to train was imposed on the Council, Count I of the third-party complaint must be dismissed.

The Council is an advisory body. Its authorizing statute provides:

> The Council on Police Training shall serve in an advisory capacity to the Chief of Intergovernmental Services and shall consider matters relating to police training and such other matters as may be referred to it by the Governor, Secretary of the Department or Chief of the Office of Intergovernmental Services. The Council may study, research, plan and advise the Chief, the Secretary and the Governor on matters it deems appropriate to enable the Office of Intergovernmental Services to function in the best possible manner.

29 *Del.C.* § 8205(b). The Delaware Police Training Program was established pursuant to 11 *Del.C.* §§ 8401 *et seq.* Section 8405(a) provides that every municipality shall require probationary police officers to attend a school authorized by the Council to provide training and to successfully complete a training course before being given a permanent appointment. Police officers serving under permanent appointment on July 11, 1969, are exempted from this requirement by section 8405(b).

Section 8404(a) describes the role of the Council in the program. The permissive language "[t]he Council may" precedes a list of 16 functions. The functions include the establishment of minimum educational and training qualifications for police officers, the prescribing of standards for in-service or continued training of police officers, and the establishment of minimum training requirements, attendance requirements, and standards of operation for police training schools.

This statutory scheme imposes no duty on the Council to train municipal police officers. First, Delaware courts have held that "[i]n construing a statute the use of the word 'may' instead of 'shall' has a settled meaning. 'Shall' signifies a mandatory requirement, while 'may' evokes a discretionary reading." *Poe v. Poe,* 333 A.2d 403, 404 (Del.Super.Ct.), *appeal dismissed,* 348 A.2d 327 (Del.1975) (noting that "the language vests a permissive right" to perform the authorized function and that "there is no mandate to do so"); *see Delaware Citizens for Clean Air v. Water & Air Resources Comm'n,* 303 A.2d 666, 667

---

12. The third-party defendants note that Officer Walls was serving as a full-time Dover police officer on July 11, 1969, and was thus not required to receive mandatory training under the Delaware police training program. *See* 11 *Del.C.* § 8405(b). They also note that third-party defendants Simpson, Cassell, Oberly, Ford, Pennell, Redd, and Tieman were not members of the Council at the time Officers Hill and Kurtz received their mandatory training, and thus cannot be held liable in their individual capacities. *Cf.* Fed.R.Civ.P. 25(d) (successor public officer substituted as a party only where predecessor was a party in his official capacity); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3105 n. 11, 87 L.Ed.2d 114 (1985). The third-party plaintiff, however, alleges that the Council had a duty to train continuing beyond the mandatory training program and up to the time of Riley Holman's death. *See* 11 *Del.C.*

§ 8404(a)(5). If so, the duty would fall on each of the named third-party defendants in their individual capacities.

Third-party defendants Simpson and Cassell also contend that because the deficiencies in mandatory training for which the Council is alleged to be responsible took place in 1981, by bringing his third-party complaint in 1986 Chief Klenoski has failed to comply with Delaware's three-year statute of limitations. *See* 10 *Del.C.* § 8106. This argument is frivolous. It is a basic principle of limitations law that a cause of action does not accrue before the right to institute a suit arises. *See Dofflemyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 379 (D.Del.1983). Third-party plaintiff Klenoski's right to bring suit for indemnity or contribution arose, at the earliest, when suit was brought against him in 1986. Thus, the third-party claim is not time-barred.

(Del.Super.Ct.), *aff'd,* 310 A.2d 128 (Del. 1973). The Council is therefore under no duty to perform the functions enumerated in section 8404(a).[13] Second, and more significantly, the statute expressly places responsibility for administering the mandatory training program not on the Council, but on the Director of the Delaware State Police Training Division. 11 *Del.C.* § 8404(b). Thus, Council members are not the state officials charged with the duty to train municipal police officers. *Cf. Bush v. Viterna,* 795 F.2d 1203, 1208 (5th Cir.1986) ("accepting for now the concept that the breach of a state-imposed duty can cause a constitutional tort, we hold that the necessary causal relationship is absent when a state duty to regulate, monitor, inspect, or advise is not accompanied by an obligation to extirpate constitutionally substandard conditions or activities that may be encountered"); *Smith v. Hill,* 510 F.Supp. 767, 775–76 (D.Utah 1981) (where statute provides that County Commission "may supervise" constables, supervision is discretionary, and Commission cannot be held liable under § 1983).

■ Without a duty to provide proper and adequate training to the defendant police officers, the members of the Council on Police Training cannot be made liable to Chief Klenoski for indemnity or contribution.[14] *See Uniform Contribution Among Tort-Feasors Law,* 10 *Del.C.* §§ 6302 *et seq.* (requiring "common liability" to plaintiff); *ICI America v. Martin-Marietta Corp.,* 368 F.Supp. 1148, 1151 (D.Del.1974); *Fields v. Synthetic Ropes,* 215 A.2d 427, 430 (Del.1965). Count I of the third-party complaint against the members of the Council in their individual capacities will therefore be dismissed.

**F. Superintendent Simpson's Duty to Supervise**

■ When Dover police officers Walls, Hill, and Kurtz arrived at 1071 South Governors Avenue, where they subsequently shot and killed plaintiffs' decedent, they were outside the jurisdictional boundaries of the City of Dover. Count II of the third-party complaint therefore alleges that Chief Klenoski is entitled to indemnification or contribution from third-party defendant Simpson, the Superintendent of the Delaware State Police, because of his breach of a duty to supervise the defendant police officers. Because this contention is

---

**13.** The Council's discretion extends to the prescribing of standards for in-service or continued training of police officers under section 8404(a)(5). Under the facts of this case, in-service or continued training is the only function that all third-party defendants in their individual capacities could be held liable for failing to perform.

**14.** Even if the third-party defendants had a duty to train or supervise the defendant police officers, a finding of liability would be highly problematic under the assumption that § 1983 governs the third-party claim. The Supreme Court has rejected § 1983 liability solely on the basis of respondeat superior. *Monell v. New York Dep't of Social Servs.,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978). Therefore, an independent showing of culpable conduct on the part of the supervisory officials is necessary. Simple negligence, however, is generally insufficient to support the liability of supervisory officials for failure to adequately train or supervise individual officers. Gross negligence or recklessness is usually required. *See Languirand v. Hayden,* 717 F.2d 220 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); *Lenard v. Argento,* 699 F.2d 874 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Owens v. Haas,* 601 F.2d 1242 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979); *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978); *Jones v. McElroy,* 429 F.Supp. 848, 863 (E.D.Pa.1977). Some courts also require personal involvement or participation by supervisory officials in the alleged violation of constitutional rights. *See Chinchello v. Fenton,* 805 F.2d 126 (3d Cir.1986); *Rogers v. Rulo,* 712 F.2d 363 (8th Cir.1983), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984); *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Jones v. City of Philadelphia,* 491 F.Supp. 284 (E.D.Pa.1980). Third-party plaintiff Klenoski has not made a showing of gross negligence or recklessness sufficient to withstand a summary judgment motion, nor has he alleged any personal involvement by third-party defendants in any violation of Riley Holman's constitutional rights.

without merit, Count II of the third-party complaint must be dismissed.

The third-party plaintiff relies on 11 *Del.C.* § 8302(b), which provides:

> When police officers of local jurisdictions are acting outside their respective jurisdictions as conservators of the peace in response to a request for assistance from the State Police, those local officers shall be considered to be acting as State Police officers and shall have the powers of arrest thereof.

The third-party plaintiff argues that this statute operates to transform local police officers into state police when they leave their jurisdiction in response to a request for assistance. Therefore, the argument goes, Superintendent Simpson had a duty to supervise any local officers so transformed.

A public officer appointed as a conservator of the peace for a particular county or municipality generally has no official power to apprehend offenders beyond the boundaries of the county or district for which he is appointed. 5 Am.Jur.2d *Arrest* § 50 (1962). Delaware has modified this common law rule by statute in the case of a "fresh pursuit" of a suspected offender. 11 *Del.C.* § 1935; *see State v. Cochran,* 372 A.2d 193 (Del.1977). The Court believes that section 8302(b) is nothing more than a further modification of the common law rule in cases where local police respond to a state police request for assistance.

Section 8302(b) concededly provides both that such local officers "shall be considered to be acting as State Police officers" and that they "shall have the powers of arrest thereof." Either construction of the statute renders one phrase or the other superfluous. If section 8302(b) only confers the power to arrest, then the first phrase is meaningless. On the other hand, if the statute transforms local police into state police, then the second phrase is unnecessary. In the absence of any interpretation of the statute by the Delaware courts, this Court must resort to common sense in an effort to determine legislative intent.

The undisputed record in this case indicates that the defendant police officers were dispatched to 1071 South Governors Avenue at about 9:45 a.m. on June 21, 1985, and shot and killed Riley Holman at approximately 9:51 a.m. To contend that Superintendent Simpson was under a duty to supervise the defendant police officers at the time of the shooting—a duty that he did not have less than six minutes before— is to strain unreasonably any possible legislative purpose. Delaware courts will not construe statutes so as to require absurd or unworkable results. *See C. v. C.,* 320 A.2d 717, 722 (Del.1974); *Nationwide Mutual Ins. Co. v. Krongold,* 318 A.2d 606, 608 (Del.1974).

Without a duty to supervise the defendant police officers, Superintendent Simpson cannot be made liable to Chief Klenoski for indemnity or contribution. Count II of the third-party complaint will therefore be dismissed.[15]

## III.  CONCLUSION.

Because Delaware law imposed on the third-party defendants no duty to train or supervise the defendant police officers, I hold that they cannot be made liable to the third-party plaintiff for indemnity or contribution. Accordingly, the motions to dismiss the third-party complaint will be granted.

---

15. The third-party defendants also point to a provision of the Dover city charter, as enacted by the Delaware General Assembly, that effectively extends the arrest power of the Dover police one mile outside of the city limits. 36 Del.Laws ch. 158, § 53. The dentist's office where Riley Holman was shot and killed was less than one mile outside Dover. Because I hold that 11 *Del.C.* § 8302(b) does not impose a duty to supervise on third-party defendant Simpson, I need not consider the third-party defendants' argument that the Dover city charter renders § 8302(b) inapplicable in this case.