**Mark HEPBURN, an Incompetent by Deborah HEPBURN, His Mother Plaintiff,**

v.

**ATHELAS INSTITUTE, INC., et al., Defendant/Third–Party Plaintiff,**

v.

**The National Center on Institutions and Alternatives, Inc., Third–Party Defendant.**

No. CIV.A. WDQ–02–3179.

United States District Court, D. Maryland, Northern Division.

July 1, 2004.

Alan R. Engel, Robert A. Sapero, Sapero and Sapero, Baltimore, MD, for Plaintiff.

Joseph F. Cunningham, Geoffrey Martin Bohn, Robert A. Battey, Joseph F Cunningham and Associates, Arlington, VA, for Defendant.

## MEMORANDUM OPINION

QUARLES, District Judge.

Pending is a Motion to Dismiss the Third–Party Complaint filed by Third–Party Defendant The National Center on Institutions and Alternatives, Inc.

("NCIA"). The motion will be granted for the following reasons.

## I. Background

NCIA and Athelas Institute, Inc. ("Athelas") both provide services to developmentally and physically disabled persons. 04/21/03 Memorandum Opinion at 3. Plaintiff Mark Hepburn resided at facilities operated by NCIA, but often spent daytime hours at Athelas facilities. *Id.* NCIA was still involved in this daytime care, however, because these Athelas facilities contracted with NCIA to provide "habilitation, vocational, and individual support services to Mr. Hepburn." *Id.* NCIA and Athelas received federal funding under Title 42 U.S.C. §§ 1396–96u. *Id.*

On September 29, 1999, Hepburn choked on a sandwich at one of the joint Athelas/NCIA facilities. *Id.* The incident caused permanent injuries to, *inter alia,* Hepburn's brain and nervous system, which left him in a paralyzed vegetative state. *Id.* at 3–4.

Hepburn brought this action against both NCIA and Athelas on September 27, 2002, asserting claims under, *inter alia,* Title 42 U.S.C. § 1983. On April 4, 2003, the Court dismissed all claims against NCIA because Hepburn failed to properly serve it under Fed.R.Civ.P. 4. 04/21/03 Memorandum Opinion & Order at 4–8. Hepburn's state claims against Athelas were also dismissed, but Hepburn's § 1983 claim against Athelas remained. *Id.* at 14, *citing Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

On November 20, 2003, Athelas filed a Third–Party Complaint against NCIA, alleging negligence and seeking indemnification and contribution. The Third–Party Complaint alleges that NCIA was responsible for providing services to Hepburn, including the preparation of meals, and that it negligently prepared the meal that injured Hepburn. Third–Party Complaint at ¶¶ 4, 7. Athelas alleges NCIA's negligence with respect to Hepburn led to the suit against it and that Athelas should, therefore, be able to recover from NCIA. *Id.* at ¶¶ 10–18.

NCIA seeks dismissal of Athelas' Third–Party Complaint on the ground that § 1983 does not provide a right of indemnification or contribution. NCIA argues that the negligence claim is simply a restatement of the indemnification and contribution claims, and suffers from the additional defect that NCIA owed no duty to Athelas.

## II. Analysis

A Fed.R.Civ.P. 12(b)(6) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), *citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). All allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Raj Matkari, et al.,* 7 F.3d 1130, 1134 (4th Cir.1993). If any possible basis for relief has been pled, the Court must deny the motion to dismiss. *Garland v. St. Louis,* 596 F.2d 784 (8th Cir. 1979), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992.

### A. Contribution

Title 42 U.S.C. § 1983 does not expressly provide a right of contribution. *Johnson v. Rogers,* 621 F.2d 300, 304 n. 6 (8th Cir.1980)(turning to state law after concluding that federal law does not adequately address contribution issue); *Miller v. Apartments and Homes of New Jersey, Inc.,* 646 F.2d 101, 108 (3d Cir.1981) (implying right to contribution as matter of

federal common law); *Mason v. The City of New York*, 949 F.Supp. 1068, 1077 (S.D.N.Y.1996) (collecting authorities that have found § 1983 does not provide a right to contribution).[1] *Miller v. Apartments and Homes of New Jersey, Inc.*, 646 F.2d 101 (3d Cir.1981), which found that § 1983 does allow contribution as a matter of federal common law, has been criticized as inconsistent with Title 42 U.S.C. § 1988 and the Supreme Court's decision in *Northwest Airlines, Inc. v. Transport Workers Union of America*, which refused to find a contribution right in Title VII. 451 U.S. 77, 91–94, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981)(Title VII neither expressly nor implicitly authorizes contribution); *Dobson v. D.R. Camden*, 705 F.2d 759, 763 (5th Cir.1983), *rev'd on other grounds*, 725 F.2d 1003 (5th Cir.1984) (noting that § 1988 presupposes that federal law will, at times, not resolve an issue and that resort to federal common law powers to fill in these gaps is only appropriate under the framework of § 1988); *Mason*, 949 F.Supp. at 1079 & n. 10 (finding no right to contribution under § 1983 and recognizing that *Northwest Airlines* cautions against adherence to the Third Circuit's decision in *Miller*). Moreover, contribution rights should not be read into federal statutes to protect the persons regulated by the statute at the expense of the persons protected by the statute. *Northwest Airlines, Inc.*, 451 U.S. at 91–92, 101 S.Ct. 1571 ("Neither the Equal Pay Act nor Title VII expressly creates a right to contribution in favor of employer ... [as] it cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted"); *see also Texas Industries v. Radcliff Materials, Inc.*, 451 U.S. 630, 639, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) ("Moreover, it is equally clear that the Sherman Act and the provision for treble-damages actions under the Clayton Act were not adopted for the benefit of the participants in a conspiracy to restrain trade. On the contrary, petitioner is a member of the class whose activities Congress intended to regulate for the protec-

---

1. Federal law controls Athelas' contribution and indemnity claims. *See Holman v. Cassell*, 648 F.Supp. 947, 952 n. 5 (D.Del.1986) (when "plaintiff did in fact sue under § 1983 the party against who contribution or indemnity is sought ... courts have uniformly applied federal law to determine the existence of a right to contribution or indemnity among co-defendants ..."). Federal jurisdiction over the contribution and indemnity claims is proper even if the Court lost federal jurisdiction over NCIA after the dismissal of Hepburn's § 1983 claim against it. Athelas' third party complaint asserts a contribution claim that is a derivative, rather than independent, cause of action based on Athelas' potential § 1983 liability. *See Horton v. United States*, 622 F.2d 80, 83 (4th Cir.1980) (contribution is derivative in nature); *see, e.g., Baker, Watts & Company v. Miles & Stockbridge*, 95 Md.App. 145, 188, 620 A.2d 356 (1993)("Contribution is a derivative right and not a new cause of action"). Accordingly, the contribution claims involving § 1983 liability are not independent state law actions; they are derivative federal claims that arise under the laws of the United States. *Cf. Fielding v. Allen*, 181 F.2d 163, 167–68 (2d. Cir.1950), *cert. denied*, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950) (shareholder derivative action asserts corporation's federally conferred right and is therefore also a federal cause of action); *see also Drachman v. Harvey*, 453 F.2d 722, 728 (2d Cir.1971) ("derivative right of action to vindicate a federally created corporate right is one which is conferred solely by federal law"); *see also Miller v. Apartments & Homes*, 646 F.2d 101, 108 (3d Cir.1981) ("the rule of contribution is intimately bound up with the nature and extent of the substantive federal rights created by the civil rights acts ... [c]onsequently, the selection of a contribution rule bears on the work of federal courts as well as on the substantive rights and liabilities of the parties"); *but see Holman*, 648 F.Supp. at 952–53 & n. 6 (treating contribution claim by defendant against otherwise proper § 1983 party that was not named in lawsuit as pendant state law claim).

tion and benefit *of an entirely distinct class* ... The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow of joint wrongdoers ... [indicates] that Congress neither expressly or implicitly intended to create a right to contribution") (internal quotations and citations omitted); *Wright v. Reynolds,* 703 F.Supp. 583, 590 (N.D.Tex.1988)(contribution and indemnity are not available in § 1983 cases because "Congress, through section 1988, only allowed courts to fashion a remedy ... [to protect the civil rights] of all persons in the United States ... [and therefore] does not authorize courts to fashion a body of federal law involving the rights of those who violate the civil rights of others"). Accordingly, § 1983 does not create a right to contribution.

■ Section 1988 does not create any additional causes of action; it merely provides the applicable law in actions that are already proper under civil rights statutes like § 1983. *Moor v. County of Alameda,* 411 U.S. 693, 701, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)(Section 1988 does not authorize federal courts "to borrow entire causes of action from state law"); *Johnson v. Ryder Truck Lines, Inc.,* 575 F.2d 471, 474 (4th Cir.1978) ("Section 1988 in itself does not create any cause of action, but it 'instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts'") (internal quotation omitted). However, because contribution is derivative in nature, a claim for contribution may not constitute a prohibit-

ed additional cause of action under § 1988. *See Horton v. United States,* 622 F.2d 80, 83 (4th Cir.1980)(contribution is derivative in nature); *Baker, Watts & Company v. Miles & Stockbridge,* 95 Md.App. 145, 188, 620 A.2d 356 (1993) ("Contribution is a derivative right and not a new cause of action"); *see also Moor,* 411 U.S. at 702, 93 S.Ct. 1785 ("Section 1988 ... is intended to complement the various acts which do create federal causes of action for the violation of federal civil rights").

■ Section 1988 "authorize[s] federal courts, where federal law is unsuited or insufficient 'to furnish suitable remedies [in a civil rights action], to look to principles of the common law, as altered by state law', so long as such principles are not inconsistent with the Constitution and laws of the United States." *Moor,* 411 U.S. at 702–03, 93 S.Ct. 1785; *see also Mason,* 949 F.Supp. at 1077. Common law tort contribution rights are codified under the Maryland Uniform Contribution Among Joint Tort-feasors Act, Md.Code Ann., Courts and Judicial Proceedings, § 3–1401 *et seq.* ("Contribution Act"). Section 3–1401 defines "Joint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury to person or property ..." *Id.* Section 3–1402 establishes a right of contribution among joint tortfeasors which attaches after one joint tortfeasor "discharge[s] the common liability" or pays "more than a pro rata share of the common liability." *Id.*[2]

■ Though the Contribution Act codifies a general contribution right,[3] there is no indication that it applies to Maryland

---

**2.** The Fifth Circuit in *Dobson* identified the following four theories of contribution: 1) contribution is not allowed because "courts should not assist a wrongdoer in spreading the consequences of his or her wrongful acts among other culpable parties;" 2) *pro tanto,* which results in a dollar-for-dollar reduction in an award against a non-settling tortfeasor; 3) *pro rata,* where damages are divided equal-

ly among joint tortfeasors; and 4) proportional, where each tortfeasor is responsible for a share of damages equal to its relative fault. *Dobson,* 705 F.2d at 762.

**3.** There is no contribution right at common law. *Central GMC, Inc. v. Helms,* 303 Md. 266, 276, 492 A.2d 1313 (1985).

State Constitutional torts, which unlike common law torts, are state law claims that arise when government officials violate the Maryland Declaration of Rights. *DiPino v. Davis*, 354 Md. 18, 50–51, 729 A.2d 354 (1999)(distinguishing between common law torts, which are subject to certain common law and statutory immunities, from Constitutional torts, which are not subject to either local government official or local government entity immunity).[4] The Local Government Tort Claims Act, Md.Code Ann., Courts and Judicial Proceedings, § 5–301, *et seq.*, ("LGTCA") and the Maryland Tort Claims Act, Md.Code Ann., State Gov't, § 12–401, *et seq.*, codify contribution and indemnity rights of Local and State officials in Maryland. *See* Md. Code Ann., Courts and Judicial Proceedings, § 5–303(b)(1)("[A] local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government); § 5–303(c)(3)("A local government may not enter into an agreement that requires indem-

nification for an act or omission of an employee that may result in liability for punitive damages"); *see also* Maryland Tort Claims Act, Md.Code Ann., State Gov't, § 12–404 (authorizing Board of Public Works to satisfy, wholly or in part, a settlement or judgment against the State or any State personnel); *id.*, § 12–402(5) ("as a matter of State policy, it is essential to protect from liability State personnel who are acting within the scope of public duties and responsibilities and without malice or gross negligence"). The LGTCA "ensure[s] that the financial burden of compensation [for Constitutional torts] is carried by the local government ultimately responsible for the public official's acts." *Ashton v. Brown*, 339 Md. 70, 107, 660 A.2d 447 (1995). Given this purpose, it is not surprising that neither the parties, nor the Court, has identified any Maryland case in which the Contribution Act was found to provide contribution between Constitutional tortfeasors.[5] Accordingly, the Contribution Act does not allow for contribution rights between defendants liable for § 1983 violations.[6]

---

4. To deter Constitutional torts, Maryland imposes *respondeat superior* liability. *DiPino v. Davis*, 354 Md. 18, 48,51–52, 729 A.2d 354 (1999)(local governments are not responsible, under *respondeat superior* liability, for the common law torts of its agents but are responsible under that theory for the Constitutional torts of its agents).

5. Maryland law does not favor the protection of government actors who act with gross negligence. Md.Code Ann., Courts and Judicial Proceedings, § 5–522(b) (State personnel are not immune from suits involving malice or gross negligence); Md.Code Ann., State Gov't, § 12–402(5)(state policy of protecting state employees does not apply to acts involving malice or gross negligence); *compare* Md. Code Ann., Courts and Judicial Proceedings, § 5–303(c)(3)("A local government may not enter into an agreement that requires indemnification of an act or omission of an employee that may result in liability for punitive damages). The use of the Contribution Act to create a right of contribution between parties

that, by virtue of § 1983 liability in this case, would have been found to act with, at least, gross negligence, would conflict with this policy. *Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir.2001) (compiling cases in which professional judgment standard is analogized to at least gross negligence, if not recklessness) (internal citations omitted).

6. To the extent that municipal liability for § 1983 claims can be seen as a form of contribution, this limited federal right cannot be seen as authorizing the importation of more expansive contribution rights through reference to state statutes that are not specifically designed to be applied to constitutional torts. *See, e.g., Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). If anything, the limited scope of municipal liability for § 1983 violations indicates that contribution rights should not be casually implied. *See id.; Wellington v. Daniels*, 717 F.2d 932, 935–36 (4th Cir.1983).

Even if the Contribution Act permitted contribution among defendants found liable for committing Constitutional torts, contribution under such circumstances is inconsistent with federal law.[7] Section 1983's twin goals of compensation and deterrence are not furthered by reducing the defendants' costs of violations while placing the risk of an insolvent defendant on the plaintiff. *Dobson*, 705 F.2d at 764 (Section 1983 has two goals, compensation and deterrence); *id.* at 767 ("apportion[ing] liability among all contributing parties ... places on the plaintiff the risk that a tortfeasor may be insolvent"); *Mason*, 949 F.Supp. at 1079 (contribution is impermissible under § 1983 because it interferes with statute's deterrence objective).

Moreover, because contribution rights are based upon principles of equitable distribution of damages, the right is ill-suited to § 1983 cases. *Dobson*, 705 F.2d at 767 ("In the case of joint tortfeasors or a contributorily negligent plaintiff, the harm suffered by the plaintiff was caused by two or more parties ... [t]his, in brief, is the fairness rationale for comparative fault"). The level of culpability necessary for § 1983 liability reduces the need to equitably distribute damages among tort-feasors; as evidenced by the fact that the qualified immunity and professional judgment standards either already consider the plaintiff's conduct or render it irrelevant. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (Police Officers are entitled to qualified immunity from § 1983 claims so long as "their actions are objectively reasonable under existing circumstances and in light of existing law"); *Patten v. Nichols*, 274 F.3d 829, 835 (4th Cir.2001) (professional judgment standard only imposes liability under § 1983 when "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment"); *see also Texas Industries*, 451 U.S. at 635, 101 S.Ct. 2061 ("the efforts of petitioner and supporting *amici* to invoke principles of equity presuppose a legislative intent to allow parties violating the law to draw upon equitable principles to mitigate the consequences of their wrongdoing"); *Koch v. Mirza*, 869 F.Supp. 1031, 1042 (W.D.N.Y.1994) (noting level culpability needed for § 1983 liability and stating general rule that "[i]ndemnity and contribution will not be allowed in favor of an intentional tort-feasor").[8] For all of these reasons, even if Maryland law provided a

---

7. In *Dobson v. D.R. Camden*, 705 F.2d 759, 766 (5th Cir.1983), *rev'd on other grounds*, 725 F.2d 1003 (5th Cir.1984), the Fifth Circuit noted that the application of federal common law is appropriate "pursuant to section 1988's implicit grant of authority to do so when federal law is deficient and state law would conflict with federal law." *Id.* (internal citation omitted). The Fifth Circuit acknowledged that this process entailed "climb[ing] through the rabbithole of section 1988" to "the Wonderland of federal common law." *Id.* The Court notes that its analysis regarding the application of any Maryland right of contribution to § 1983 claims also serves as an analysis of the propriety of adopting contribution rights as a matter of federal common law pursuant to an implied grant of power under § 1988.

8. In the qualified immunity context, the plaintiff's actions are already accounted for in examining whether the officials acted reasonably under all of the available circumstances. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (Police Officers are entitled to qualified immunity from § 1983 claims so long as "their actions are objectively reasonable under existing circumstances and in light of existing law"). Given the level of culpability at issue under the professional judgment standard, the comparative fault of the plaintiff would not be a defense to liability. *Compare Duren v. State*, 203 Md. 584, 593, 102 A.2d 277 (1954) ("If the appellant was guilty of gross negligence, he cannot excuse his conduct and escape the consequences by showing that the deceased was guilty of contributory negligence"), *with,*

right to contribution among defendants in Constitutional tort cases, such a right is inconsistent with § 1983, and Athelas's third-party contribution and indemnity claim will be dismissed.[9]

### B. Negligence Claim

 Athelas alleges that "NCIA had a duty to provide safe and reasonable habilitation ... to Hepburn," that it "breached the aforesaid duty by negligently preparing the sandwich" that injured him, and that "[a]s a direct result of defendant NCIA's negligence, plaintiff Hepburn has filed a Complaint against ... defendant Athelas ..." Third–Party Complaint at ¶¶ 6,8,12. Athelas concludes "[a]s a proximate cause [sic] of defendant NCIA's negligence, defendant Althelas has sustained damages in being required to defend against plaintiff Hepburn's Complaint and may have further exposure to damages resulting from the above-captioned litigation." *Id.* at ¶ 13.

In Maryland, a plaintiff cannot bring a negligence claim without identifying the breach of a duty that was owed to it, rather than another party. *Remsburg v. Charles Montgomery*, 376 Md. 568, 582, 831 A.2d 18 (2003). Accordingly, the negligence claim in the third-party complaint fails because: 1) it simply restates the contribution and indemnity claim that is unavailable under § 1983; and 2) it relies upon the duty NCIA owed to Hepburn, rather than the plaintiff.

### III. Conclusion

Because contribution and indemnity is unavailable to Athelas under the circumstances of this case, and it has failed to state a claim for negligence under Maryland law, NCIA's motion to dismiss the counterclaim will be granted.

---

*Patten,* 274 F.3d at 843 (compiling cases in which professional judgment standard is analogized to at least gross negligence, if not recklessness). Accordingly, though gross negligence is not necessarily a bar to contribution under some statutes, the fact that such culpability is always present in § 1983 cases cau- tions against providing further protection to liable defendants.

9. Indemnity rights are unavailable under § 1983 for the same reasons that contribution rights are unavailable. *Koch v. Mirza,* 869 F.Supp. 1031, 1042 (W.D.N.Y.1994).