**Ana ROSADO, Plaintiff,**

v.

**The NEW YORK CITY HOUSING AUTHORITY, Housing Police Officer Robert Medoro, Shield No. 3811, Housing Police Officer Jonas Bright, Shield No. 2216, Housing Police Officer Rajiv Khurana, Shield No. 180, and Housing Police Officer Erin O'Grady, Shield No. 3724, Defendants.**

**The NEW YORK CITY HOUSING AUTHORITY, Housing Police Officer Robert Medoro, Shield No. 3811, Housing Police Officer Jonas Bright, Shield No. 2216, Housing Police Officer Rajiv Khurana, Shield No. 180, and Housing Police Officer Erin O'Grady, Shield No. 3724, Third–Party Plaintiffs,**

v.

**The CITY OF NEW YORK, Third–Party Defendant.**

No. 87 Civ. 9261 (LLS).

United States District Court, S.D. New York.

Sept. 18, 1989.

Schwaber & Kafer, New York City, for plaintiff; Fern H. Schwaber, of counsel.

Suss & Suss, P.C., New York City, for defendant and third-party plaintiff Jane Doe (Erin O'Grady); Marvin N. Suss, of counsel.

Diamond, Rutman & Costello, New York City, for defendant and third-party plaintiff John Doe (Rajiv Khurana); Amy Joyce Fenster, of counsel.

Peter L. Zimroth, Corp. Counsel of the City of New York, (Matthew Flamm, of counsel), New York City, for third-party defendant; Robin R. Rossenfeld, of counsel.

## OPINION AND ORDER

STANTON, District Judge.

This action arises from the arrest of plaintiff Ana Rosado outside her parents' apartment on October 6, 1986. Ms. Rosado was released on her own recognizance three days later, and charges of assault, resisting arrest and harassment brought against her were all dismissed by February 6, 1987.

Two motions are decided in this opinion: defendant Rajiv Khurana's and Erin O'Grady's motions for summary judgment dismissing, as against them, Ms. Rosado's claim for malicious prosecution, and third-party defendant City of New York's motion for summary judgment dismissing third-party plaintiffs' claims for contribution.

## BACKGROUND

At around 9:45 p.m. on October 6, 1986, New York City Housing Authority Officers Jonas Bright and Robert Medoro arrived at Apartment 14C at 250 Clinton Street. They were responding to a call made by Regorio Rosado that his daughter Ana was drunk, was harassing his wife and himself, and did not live in the apartment with them.[1] Shortly thereafter, Officers Erin O'Grady and Rajiv Khurana also arrived at Mr. Rosado's apartment.

Some or all four of the officers talked first with Mr. Rosado in the kitchen. They then spoke to Ms. Rosado in the living room, and she expressed her willingness to leave the apartment.

Once Ms. Rosado was in the exterior hallway, however, one of the officers asked her for her keys to the apartment.[2] She

---

1. Plaintiff disputes this description of Mr. Rosado's statements. For the purposes of this opinion it is unnecessary to resolve this dispute.

2. According to Officer Medoro, Ms. Rosado was asked for her keys after she said, " '[F]ine, I'll leave the apartment but ... I have the keys. I'll

apparently refused, and a "tussle ensued." The officers' recollections of what happened next diverge. All agree that Officers Bright and Medoro wrestled Ms. Rosado to the ground and ultimately placed handcuffs on her. Officer Bright stated that Officers Khurana and O'Grady also fell to the floor in the attempt to restrain Ms. Rosado (Exhibit F to the affidavit of Fern H. Schwaber, Esq., sworn to July 27, 1989); Officer Khurana stated that he participated in the struggle, but Officer O'Grady did not (*Id.* at Exhibit G); and Officers O'Grady and Medoro both recall that only Officers Medoro and Bright participated. (*Id.* at Exhibits B and H) Either way, all four officers rode down the elevator with Ms. Rosado.

At this point, Officers Medoro and Bright placed Ms. Rosado in their car, and Officers O'Grady and Khurana left. There is no dispute that Officers O'Grady and Khurana did nothing further with respect to Ms. Rosado and the charges brought against her. *See Id.* at Exhibit B (Officer O'Grady stated that she "had no further interaction with the concerned officers or Ms. Rosado"); *id.* at Exhibit F (Officer Bright stated that "Officer O'Grady and Officer Khurana left the location in their [car] and had no further interaction with them."); *id.* at Exhibit H ("Officer Medoro noted that Officer O'Grady and Officer Khurana left the location and had no further interaction with them.")

Officers Medoro and Bright took Ms. Rosado to a Housing Police holding facility where she was placed in a cell, still in handcuffs. Three hours later, Ms. Rosado was taken to the hospital and treated for various injuries. Ms. Rosado spent most of the next day, October 7, 1986, in the City of New York's custody at Manhattan Central Booking at One Police Plaza. On the morning of October 8, 1986 she was taken to 100 Centre Street, and on October 9, 1986 was arraigned on charges of assault, resisting arrest and harassment. Ms. Rosado alleges that "Defendants BRIGHT

be back in five minutes right after you leave.' " (Exhibit H to the affidavit of Fern H. Schwaber, Esq., sworn to July 27, 1989)

and MEDORO falsely represented to employees of the New York county District Attorney's Office, a Judge of the Criminal Court, and other Court personnel, that the plaintiff had committed [those] offenses." (Complaint, ¶ 44)

The documents[3] which support the charges filed against Ms. Rosado include: 1) a misdemeanor complaint sworn to by Officer Michael McCann which states that Officer Medoro told him that Ms. Rosado "act[ed] recklessly and with intent to cause physical injury ... and to harass, annoy and alarm [him]", "caused severe contusions on PO Bright's right wrist by repeatedly punching and kicking PO Bright", and "intentionally prevented a police officer from effecting an authorized arrest"; 2) a report entitled "Online Booking System Arrest Worksheet" prepared by Officer McCann which states that Ms. Rosado "became abusive and belligerent when Officers Bright and Medoro tried to remove her from Apt. [She] hit and kicked said officers which caused them to be treated in hospital"; and 3) a New York City Housing Authority—Police Department Complaint Report prepared by Officer Edward (listing Officer Medoro as the arresting officer and Officer McCann as the officer assigned to the case) which states that Ms. Rosado "became abusive and belligerent, refused to return apt key to [Mr. Rosado] and refused to leave. [She] began kicking and punching officers.... Medoro sustained injury to left arm. P.O. Bright injured right wrist."

## DISCUSSION

### 1. Malicious Prosecution

"The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Broughton v.*

**3.** These documents are attached to defendant O'Grady's Brief in Support of the Motion for Partial Summary Judgment.

*State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310, *cert. denied sub nom. Schanbarger v. Kellogg*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

At issue here is the first element. Ms. Rosado contends that Officers O'Grady and Khurana are joint tortfeasors and thus "just as liable as Bright and Medora [sic] for the iniation [sic] of the criminal prosecution" because they "participated in the physical seizure and arrest of the plaintiff as well as escorted her to the police car for transportation to the Housing Authority's office for booking." (Plaintiff's Memorandum, p. 2) She reasons, that by these actions, Officers O'Grady and Khurana "knew or should have known that their participation in the arrest of plaintiff would lead to the filing of charges against her." (*Ibid.*)

Accepting Ms. Rosado's version of the events, Officers O'Grady and Khurana helped restrain and arrest her. These assertions suggest that they might be liable, as joint tortfeasors with Officers Medoro and Bright, for the tort of false imprisonment. *See Broughton*, 37 N.Y.2d at 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 ("action for false imprisonment ... protects the personal interest of freedom from restraint of movement. Whenever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference.") (citations omitted). Indeed, plaintiff's eighth cause of action alleged[4] that all the defendants "subjected the plaintiff to false arrest, false imprisonment, and deprivation of liberty without due process." (Complaint, ¶ 78) Officers O'Grady's and Khurana's potential liability for false imprisonment must be kept separate from their potential liability for the tort of malicious prosecution.

Ms. Rosado also suggests that Officers O'Grady and Khurana "cannot insulate themselves from the consequences of their unlawful actions simply because they did not sign an accusatory instrument against plaintiff." (Plaintiff's Memorandum, p. 2)

A claim of malicious prosecution requires some "unjustified resort by defendant to the processes of criminal law." *Weg v. Lippman*, 63 Misc.2d 352, 312 N.Y.S.2d 862, 864 (Civ.Ct.1970).

The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation. The essence of malicious prosecution is the perversion of proper legal procedures. Thus, it has been held that some sort of prior judicial proceeding is the *sine qua non* of a cause of action in malicious prosecution. Such a judicial proceeding may be either an evaluation by a Magistrate of an affidavit supporting an arrest warrant application, or an arraignment or an indictment by a Grand Jury....

The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant.... [A]n unlawful detention gives rise to a cause of action for false imprisonment "except where the confinement was by arrest under a valid process issued by a court having jurisdiction" (Restatement, 2d, Torts, § 35, comment a; Prosser, Torts [4th ed.], § 11). When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution. *Broughton*, 37 N.Y.2d at 456–57 [373 N.Y.S.2d 87, 335 N.E.2d 310] (citations omitted).

*See also Martin v. City of Albany*, 42 N.Y.2d 13, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (Ct.App.1977) (first element established where plaintiff arrested without warrant and information filed); *Russo v. New York*, 672 F.2d 1014 (2d Cir.1982) (judge issued arrest warrant based on officer's information complaint); *Lutz v. Watson*, 136 A.D.2d 888, 525 N.Y.S.2d 80 (4th Dep't 1983) (upheld malicious prosecution claim where plaintiff alleged misrepresentations and omissions in the information on which arrest warrant was based); *cf. Gregorio v. Terminal Trading Corp.*, 39 A.D.2d 705, 331 N.Y.S.2d 755, 757 (2d Dep't 1972) (where plaintiff's employer made original complaint to police and accusatory informa-

---

**4.** This cause of action was dismissed as time-barred on May 30, 1989.

tion signed by detective, witness before grand jury and at trial did not "initiate or procure the initiation of the criminal proceedings against plaintiff").

Nonetheless, Ms. Rosado argues that *Rosario v. Amalgamated Ladies' Garment Cutters' Union*, 605 F.2d 1228 (2d Cir. 1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), and *Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), demonstrate that "the Second Circuit has recognized that the commencement of a criminal prosecution exists where there is an arrest without a warrant." (August 18, 1989 Letter from Fern H. Schwaber, Esq.) In *Rosario* the issue was whether the accusatory instrument which begins the proceeding must first be presented to "some independent official" such as a judge or magistrate. *Id.* at 1249. The Second Circuit reasoned that the tort of malicious prosecution is in part

> intended to protect an individual from the unwarranted defamation of character, inconvenience and anxiety suffered when he is compelled to appear in a court to answer anticipated criminal charges.... The Appearance Ticket may have an impact on the accused just as severe as that of a summons. When either instrument is issued the accused bears the inconvenience and expense of appearing in court and, perhaps more important, is subject to the anxiety induced by a pending criminal charge. *Id.* at 1249–50.

■ The statement Ms. Rosado cites from *Raysor*, 768 F.2d at 38, that where an officer made the arrest at his sergeant's order, the "agent is not relieved of liability merely because he acted at the command of the principal", concerned only that plaintiff's false arrest claim. The court also reinstated the plaintiff's malicious prosecution claim because the officer "knowingly ma[de] false or incomplete statements on the accusatory instrument." *Id.* Thus,

plaintiff's contention that "The facts of the instant case are more egregious than those set forth in *Raysor* in that ... Khurana and O'Grady were present and involved in the unlawful arrest of the Plaintiff," (Plaintiff's Memorandum, p. 4), simply ignores the well-established principle that the essence of malicious prosecution is the institution of a criminal proceeding, whether by wrongfully obtaining a warrant for the plaintiff's arrest or preparing (or causing one's agent to prepare) a post-arrest accusatory instrument.

### 2. Third-party Claims for Contribution

■ According to defendant The New York City Housing Authority (the "Authority")[5] "the sole basis for asserting a third-party claim against the City is the improper handling of Plaintiff while she was in the City's custody.... For purposes of this motion, we must assume that the City acted negligently in the manner in which it processed Plaintiff and that as a result of that negligence Plaintiff suffered damages." (Authority Memorandum, p. 2–3) The City's failure to fingerprint Ms. Rosado lies at the crux of the Authority's allegations.

The Authority concedes that there is no right to contribution under 42 U.S.C. § 1983. However, it argues that 42 U.S.C. § 1988 incorporates New York state claims for contribution. Section 1988 provides:

> The jurisdiction in civil ... matters conferred on the district courts by the provisions of [42 U.S.C. § 1983] ... for the protection of all persons in the United States of their civil rights, and for their vindication, shall be exercised and enforced in conformity with the law of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes

---

**5.** The City's motion to dismiss the other defendants' third-party claims is unopposed, and is

accordingly granted.

of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause ...

Thus, the Authority contends that it may seek contribution from the City under N.Y. C.P.L.R. § 1401 which provides that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." This section " 'applies not only to joint tortfeasors, but also to concurrent, successive, independent, alternative, and even intentional tortfeasors.' " *Schauer v. Joyce*, 54 N.Y.2d 1, 444 N.Y.S.2d 564, 565, 429 N.E.2d 83, 84 (Ct.App.1981) (quoting Siegel, New York Practice, § 172, p. 213).

The City takes issue with the Authority's position in two respects. First, whereas the Authority alleges that the City was merely negligent, liability under § 1983 requires that the City had an unconstitutional municipal custom, practice or policy causing a constitutional violation. *City of Canton v. Harris*, — U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Respondeat superior will not suffice. *Id.* Therefore, incorporating N.Y.C.P.L.R. § 1401 into 42 U.S.C. § 1983 would be "inconsistent with the Constitution and laws of the United States." Second, even if § 1401 were to be incorporated into § 1983, "the alleged injuries caused by the City's employees are distinct and divisible from those allegedly caused by the Authority or its employees." (City's Reply Memorandum, p. 4)

The City's reasoning is sound. In *Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Development Corp.*, 71 N.Y.2d 599, 528 N.Y.S.2d 516, 518, 523 N.E.2d 803, 805 (Ct.App.1988), the Court of Appeal stated that § 1401's "essential requirement" is that the parties contributed to the same injury. Thus, there is no liability as a successive tortfeasor if the "claimed negligence of [the City] could not have aug-

mented the damages for which [the Authority] may be held responsible." *Id.* However, even if the City and the Authority did contribute to the same injury, 42 U.S.C. § 1983 precludes imposing liability on the City for the mere negligence of its employees. Therefore, liability under N.Y. C.P.L.R. § 1401 cannot be incorporated under § 1983 pursuant to § 1988. Put another way, 42 U.S.C. § 1988 serves the purposes of vindicating rights under § 1983, not state laws of contribution.

## CONCLUSION

Defendant Khurana's and O'Grady's motions for summary judgment dismissing plaintiff's tenth claim for malicious prosecution as against them are granted. Third-party defendant The City of New York's motion for summary judgment dismissing third-party plaintiffs' claims for contribution is granted.