**Gerald W. KOCH, D.D.S., Plaintiff,**

v.

**Mahmud MIRZA, M.D., Rubina Mirza, D.D.S., Robert Coffey, Russell Massaro, M.D., Elliott G. Rubenstein, John O. Swearingen, Genevieve Collins, Michael Weiner, C. Richard Orndoff, David J. Carlini, and Philip D. Smith, Defendants.**

No. 91–CV–685A.

United States District Court,
W.D. New York.

Feb. 18, 1994.

J. Daniel Lenahan, Buffalo, NY, for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y., (Peter B. Sullivan, Asst. Atty. Gen., of counsel), Buffalo, NY, for State defendants.

Damon & Morey (Anthony J. Colucci, III, Kathleen M. Kaczor, of counsel), Buffalo, NY, for defendant Smith.

## ORDER

ARCARA, District Judge.

This matter was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on April 8, 1992. Item No. 9. On December 4, 1991, defendants M. Mirza, R. Mirza, Coffey, Rubenstein, Collins, Weiner, Orndoff and Carlini filed a motion to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). On December 16, 1991, defendant Massaro filed a motion to dismiss the complaint on the same ground.[1] Defendant Smith filed his answer to the complaint on March 18, 1992, asserting a cross-claim against the State defendants for indemnification. On March 25, 1992, the State defendants filed a motion to dismiss Smith's cross-claim. As of the filing of the motion to dismiss, defendant Swearin-

---

1. These defendants are hereinafter referred to as the "State defendants".

gen had not been served with the summons and complaint and therefore did not join in the motion.

On October 25, 1993, Magistrate Judge Foschio filed a very thorough Report and Recommendation recommending that the State defendants' motion to dismiss the complaint be granted; that the complaint be dismissed against defendants Smith and Swearingen; and that the State defendants' motion to dismiss defendant Smith's cross-claim be deemed moot, or, in the alternative, be granted on the merits. Item No. 20. Plaintiff filed objections to the Report and Recommendation on November 29, 1993. Item No. 23. The State defendants filed a response to plaintiff's objections on December 13, 1993, Item No. 24, and the Court heard oral argument on February 17, 1994.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Although plaintiff purports to object to the entirety of Magistrate Judge Foschio's Report and Recommendation, the Court finds that he has asserted only one objection: that Magistrate Judge Foschio erred in finding that plaintiff failed to allege that he attempted to speak out publicly about Rubina Mirza. This objection is relevant to Magistrate Judge Foschio's consideration of plaintiff's § 1983 claim, and whether plaintiff had set forth a deprivation of any right, privilege or immunity protected by the Constitution or laws of the United States. *See* Item No. 20, at 6–9.

Upon *de novo* review of the Report and Recommendation, and after reviewing the submissions of the parties, and hearing argument from counsel, the Court adopts the proposed findings of the Report and Recommendation with respect to plaintiff's objection. The Court notes that Magistrate Judge Foschio interpreted plaintiff's claims very broadly—reading into the complaint any possible claim plaintiff could be attempting to assert. Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motion to dismiss the § 1983 claim based on the First Amendment is granted.

With respect to defendants' motion to dismiss plaintiff's other claims, their motion to dismiss defendant Smith's cross-claim for indemnity, and Magistrate Judge Foschio's recommendation that the complaint be dismissed as to defendants Smith and Swearingen, based on the Court's review of the Report and Recommendation and the submissions of the parties, and no objections having been timely filed, the Court grants these motions and adopts these proposed findings for the reasons set forth in the Report and Recommendation.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on April 8, 1992 for report and recommendation on any dispositive motions. The matter is presently before the court on the Defendants M. Mirza, R. Mirza, Coffey, Rubenstein, Collins, Weiner, Orndoff, Carlini, and Massaro's motion to dismiss the complaint and the cross-claim, and Defendant Smith's cross-motion to dismiss the complaint.

### *BACKGROUND*

Plaintiff, Gerald W. Koch, D.D.S., filed this complaint on October 22, 1991. Plaintiff, formerly the Director of Dental Services at the Buffalo Psychiatric Center, has raised causes of action under 42 U.S.C. §§ 1983, 1985, and 1986. Defendants, with the exception of Defendant Philip D. Smith, at the time of the events giving rise to this action, were employees of the State of New York, Division of Mental Hygiene (the "State Defendants").

On December 4, 1991, the Defendants M. Mirza, R. Mirza, Coffey, Rubenstein, Collins, Weiner, Orndoff, and Carlini, filed a motion to dismiss the complaint on the ground that the complaint failed to state a cause of action. On December 16, 1991, Defendant Massaro also filed a motion to dismiss the complaint on the same ground. Defendant Smith filed his answer to the complaint on March 18,

1992, asserting a cross-claim against the State Defendants for indemnification. On March 25, 1992, the State Defendants filed a motion to dismiss the cross-claim which was asserted in the answer of Defendant Smith. As of the time of the filing of the motion to dismiss the complaint, Defendant Swearingen had not been served with the summons and complaint, therefore, Swearingen did not join in the motion.

On May 22, 1992, Plaintiff filed a motion to amend the complaint to add additional parties. This motion will be discussed in a separate Decision and Order.

On August 7, 1992, Defendant Smith filed a Memorandum of Law in support of his cross-motion to dismiss the complaint for failure to state a claim, asserted as an affirmative defense in his Answer, dated March 18, 1992.

Following the submission of various memoranda of law, the court determined that no oral argument on the motions was necessary.

For the reasons as set forth below, I recommend that the State Defendants' motion to dismiss the complaint should be GRANTED. I also recommend that the complaint should be dismissed as against Defendants Swearingen and Smith. Finally, I also recommend that the State Defendants' motion to dismiss the cross-claim of Defendant Smith should be deemed moot, and, as such, dismissed. Alternatively, I recommend that the State Defendants' motion to dismiss Defendant Smith's cross-claim be GRANTED.

### FACTS

Plaintiff, a dentist, was appointed, on September 24, 1986, as the interim supervisor of the dental office at the Buffalo Psychiatric Center.[1] Thereafter, Plaintiff was appointed as Director of Dental Services. At the time of the events giving rise to this lawsuit, Defendant Mahmud Mirza was the Director of the Buffalo Psychiatric Facility, Defendant Rubina Mirza, his wife, was a staff dentist at the facility, Defendant Coffey was the Deputy Director of the facility, Defendant Massaro was the Associate Medical Clinical Di-

rector of the facility and the Associate Commissioner, Medical, of the New York State Office of Mental Health, Defendant Rubenstein was the Associate Director of Personnel Services at the facility, Defendant Swearingen was the Director of Manpower Resources at the facility, Defendant Collins was the Director of Affirmative Action at the facility, Defendant Weiner was a member of the Western New York Regional Office of Mental Health, Defendant Orndoff was the Director of the Western New York Regional Office of Mental Health, and Defendant Carlini was the Deputy Director of the Western New York Regional Office of Mental Health. Defendant Smith, the only defendant who is not employed by New York State is the owner of Philip D. Smith & Associates, and is alleged to have questioned Plaintiff with regards to a workers' compensation claim.

Plaintiff claims that he received several complaints about the professional work of Rubina Mirza, but that he was hindered in his attempts to investigate the complaints by Defendants M. Mirza, Coffey, Rubenstein, and Massaro. Plaintiff further alleges that Rubina Mirza withdrew files from Plaintiff's offices without authorization, but that, upon reporting such incidents, Plaintiff was told to ignore her actions. According to Plaintiff, Defendants Weiner, Orndoff and Carlini refused to intervene in the dispute, despite being told of the difficulties with Rubina Mirza. Finally, on May 31, 1989, Plaintiff resigned his position at Buffalo Psychiatric Facility, on the basis that he was unable to continue his duties in a lawful and ethical manner.

On June 25, 1990, Defendant Smith questioned Plaintiff regarding the incidents in the context of investigating a workers' compensation claim concerning Rubina Mirza. Plaintiff claims that the tenor of his conversation with Smith was hostile, and that the meeting appeared to be at the instigation of the State Defendants, and for the purpose of preventing Plaintiff from "speaking with regard to" his difficulties with Rubina Mirza. *See*, Complaint at ¶ 5.

---

1. The fact statement is taken from Plaintiff's complaint and the various memoranda of law

submitted by the parties in connection with the motions.

## DISCUSSION

### 1. Motion to Dismiss the Complaint

 On a motion to dismiss, the court looks to the four corners of the complaint and is required to accept plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Association,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985). The court is required to read the complaint with great generosity on a motion to dismiss. *See Yoder v. Orthomolecular Nutrition Institute,* 751 F.2d 555 (2d Cir.1985).

Defendants argue that Plaintiff's complaint should be dismissed for failure to state a claim for which relief can be granted. Specifically, Plaintiff has alleged that his civil rights were violated by Defendants under 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff claims that Defendants conspired to violate his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the constitution by, in effect, forcing him to resign his position at the Buffalo Psychiatric Facility when he would not "credential" Dr. Rubina Mirza for her work at the facility.

### (a) 42 U.S.C. § 1983 claim

Pursuant to 42 U.S.C. § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. An individual may seek damages under 42 U.S.C. § 1985 for conspiracy to interfere with that individual's civil rights if two or more persons conspire to deprive the individual of equal protection or equal privileges and immunities under the laws of the United States. Under 42 U.S.C. § 1986, any person who has knowledge of wrongs being done under 42 U.S.C. § 1985 and who refuses to act to prevent such unlawful acts, shall be liable to the injured party for their neglect to prevent the conspiracy.

Despite giving a liberal reading to Plaintiff's Complaint, it is difficult for this court to determine which constitutional rights Plaintiff claims to have been denied. To the extent that the Complaint alleges that Plaintiff was prohibited from speaking about Dr. Rubina Mirza, the court concludes that Plaintiff is alleging that he was denied his freedom of speech in violation of the First Amendment. To the extent that Plaintiff's resignation constituted a constructive termination without a pre- or post-termination hearing, the court concludes that Plaintiff is alleging that he was denied his due process rights under the Fourteenth Amendment. To the extent that Plaintiff is claiming that his reputation was damaged by Defendants' actions, the court concludes that Plaintiff is claiming a deprivation of his liberty or property interests under the Fourteenth Amendment. The court is unable to determine from a reading of the Complaint which rights Plaintiff claims were violated under the Fourth and Fifth Amendments.

Reading the Complaint with generosity, the court finds that Plaintiff has alleged that he was prohibited from speaking out against Dr. Rubina Mirza without putting his position at the Buffalo Psychiatric Facility in jeopardy. Plaintiff has further claimed that he was essentially forced to resign when he could no longer condone Defendants' alleged actions regarding Rubina Mirza.

 Public employees, such as Plaintiff, do not, by virtue of their positions, lose their First Amendment rights to speak out on matters of public concern. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). If a public employee's protected speech was the reason for termination, the First and Fourteenth Amendments afford a claim against the employer. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 573–74, 50 L.Ed.2d 471 (1977). The threshold legal question in such cases is whether the employee's speech

dealt with matters of truly public concern as opposed to matters of purely personal interest or intra-office disputes. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983). The test to determine whether an employee's First Amendment rights have been violated requires the court to determine whether a matter of public concern has been implicated. If so, the court must consider whether the employee's interest in the speech was outweighed by the employer's interest in the effective and efficient fulfillment of its responsibilities. *Connick, supra*, at 150, 103 S.Ct. at 1691–92. A public employer can avoid liability if it can show that the employment action would have been made in any event for reasons unrelated to the exercise of First Amendment rights. *Mt. Healthy City Board of Education, supra*, 429 U.S. at 287, 97 S.Ct. at 576.

The difficulty in sustaining Plaintiff's complaint on this ground is that Plaintiff has not alleged that he attempted to speak out publicly, aside from internal credentially and rating, about Rubina Mirza. If Rubina Mirza's work abilities or ethics even were a matter of public concern, which they arguably could be since she was working at a state-run facility and assumably taking care of many public patients, Plaintiff has not stated that he was prohibited from reporting her to the New York State Health Department or an appropriate dental professional committee. Rather, he is simply alleging that he thought that she was not worthy of a good review, that she had many professional complaints against her, and, yet, that he was being forced to give her a good rating in order to keep his position. Lacking allegations that he was thwarted in his attempt to speak out on a matter of public concern, the court cannot find a constitutional violation in what appears to have been an intra-office dispute. The court has no doubt that Plaintiff felt quite strongly about Rubina Mirza's qualifications, strong enough to resign his position in protest. But that is simply not enough to support allegations of constitutional violations under 42 U.S.C. §§ 1983, 1985, and 1986.

To the extent that Plaintiff claims that he was forced to resign without a pre- or post-termination hearing, the complaint fails to allege that New York law did not afford an adequate pre- or post-deprivation remedy for his constructive discharge. Without such an allegation, the court cannot uphold a constitutional claim under the Fourteenth Amendment on this ground.

Plaintiff also alleges that his reputation was damaged by the actions of Defendants. However, reputation alone, apart from "some more tangible interests such as employment," is not by itself "liberty" or "property" sufficient to invoke the procedural protection of the due process clause. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976).

The Second Circuit has held that governmental defamation of a person who was seeking state employment was not a deprivation of a liberty interest under the Fourteenth Amendment, even if the defamation impaired that person's chances of other employment. *Neu v. Corcoran*, 869 F.2d 662 (2d Cir.1989). In another case, the Second Circuit held that no liberty interest had been denied an individual who was not, as a result of the alleged defamation, prevented from practicing his profession. *Rudow v. City of New York*, 822 F.2d 324 (2d Cir.1987).

Even if damage to reputation alone was sufficient to find a constitutional violation, Plaintiff has not alleged that Defendants damaged his reputation. Plaintiff alleges that he was forced to resign his position. He does not, however, allege that Defendants defamed him, pressured him into resigning, and prevented him from obtaining another position. He simply states in a conclusory fashion that "as a result of the actions and conspiracy of defendants herein, plaintiff's professional reputation suffered." A civil rights complaint is not sufficient unless it states specific allegations of fact indicating a deprivation of rights. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987). The only allegation that Plaintiff's reputation was damaged and that he failed to obtain other employment is Plaintiff's assertion that his devotion to his career at the Buffalo Psychiatric Center did not enable him to

develop a private practice, and that, upon his resignation, he was not able to obtain other employment. He does not state in any fashion, however, that Defendants' actions injured his private practice or that they kept him from obtaining employment elsewhere. Without more, Plaintiff has not stated a sufficient claim under the Fourteenth Amendment. *See, e.g., Neu, supra,* at 669 n. 2 (noting that Seventh Circuit had held that "a liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers" where the plaintiff was not prevented from pursuing his professional practice (quoting *Goulding v. Feinglass,* 811 F.2d 1099, 1103 (7th Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987))).

After reading the complaint, the court can find no other potential constitutional violations other than the three alleged violations discussed above. And, as discussed, these potential violations do not rise to the level required to find a violation of a person's constitutional rights. As such, there is no claim under 42 U.S.C. § 1983 for damages. "Section 1983 is not a receptical for any tort claim that might be brought against a state actor." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Accordingly, Plaintiff's claim under 42 U.S.C. § 1983 should be dismissed.

### (b) *42 U.S.C. § 1985 claim*

■ In order to establish a cause of action under 42 U.S.C. § 1985, a plaintiff must show that a defendant conspired with another person to deprive the plaintiff, or a class of which plaintiff was a member, of equal protection of the laws or of equal privileges and immunities under the law. *Sorlucco v. New York City Police Department,* 888 F.2d 4, 8 (2d Cir.1989). Section 1985 provides no substantive rights itself, but merely "provides a remedy for violation of the rights it designates." *Great American Federal Savings and Loan Association v. Novotny,*

442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

As correctly noted by Defendants, 42 U.S.C. § 1985(1) and (2) do not apply to the facts as alleged by Plaintiff.[2] Accordingly, the court assumes that Plaintiff intends to allege a cause of action under 42 U.S.C. § 1985(3).

■ In order to state a claim under 42 U.S.C. § 1985(3), a complaint must allege that the defendants who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws. *See Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990).

■ In this case, Plaintiff has not alleged any discriminatory intent by the Defendants against him. Rather, he only alleges that Defendants conspired to deprive him of his constitutional rights. This allegation is not enough to state a valid claim under 42 U.S.C. § 1985(3). *See Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 185 (2d Cir. 1991) (claim under 42 U.S.C. § 1985(3) dismissed as the complaint was "couched in terms of conclusory allegations and failed to demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' as required by § 1985") (quoting *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1358 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990)).

■ Since Plaintiff's complaint does not assert that the alleged conspiracy was formed "for the purpose of depriving" Plaintiff "of the equal protection of the laws, or of equal privileges or immunities under the laws," *see* 42 U.S.C. § 1985, the Complaint fails to state a claim under 42 U.S.C. § 1985 for which relief can be granted. *See Dubois v. Connecticut State Board of Education,* 727 F.2d 44, 47 n. 3 (2d Cir.1984). Accordingly, Plaintiff's cause of action under 42 U.S.C. § 1985 should be dismissed.

**2.** 42 U.S.C. § 1985(1) prohibits two or more persons from conspiring to prevent, by force or intimidation, any person from accepting or holding office in the United States, or to induce any officer of the United States to leave the place where his duties are required to be performed. 42 U.S.C. § 1985(2) prohibits two or more persons from conspiring to obstruct justice by intimidating a party, witness, or juror in any court of the United States.

### (c) *42 U.S.C. § 1986 claim*

 42 U.S.C. § 1986 imposes liability on an individual who has knowledge of wrongs prohibited under 42 U.S.C. § 1985, yet fails to prevent them. However, without a violation of Section 1985, there can be no violation of Section 1986. *Hahn v. Sargent,* 523 F.2d 461, 469–70 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A claim under 42 U.S.C. § 1986 is contingent upon a valid § 1985 claim. *See Seguin v. City of Sterling Heights,* 968 F.2d 584, 590 (6th Cir.1992); *Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th Cir.1985).

As I am recommending that Plaintiff's claim under 42 U.S.C. § 1985 be dismissed, I also recommend that Plaintiff's claim under 42 U.S.C. § 1986 be dismissed.

### 2. *Complaint as against Defendants Smith and Swearingen*

The State Defendants motion to dismiss was brought on behalf of all Defendants except for Defendants Smith and Swearingen. Swearingen was not made a part of the motion as, at the time the motion was filed, Swearingen had not yet been served with the summons and complaint. Defendant Smith is a private citizen and is represented by counsel other than the State Defendants' counsel. Defendant Smith's answer alleged a failure to state a claim as an affirmative defense, and Smith, in his memorandum of law, dated August 7, 1992, asked that the court treat its affirmative defense as a cross-motion to dismiss the Plaintiff's action.

 A district court may dismiss a complaint *sua sponte* for failure to state a claim under Fed.R.Civ.P. 12(b)(6) where "it is patently obvious that the plaintiff could not have prevailed on the facts as alleged in his complaint." *Baker v. Director, United States Parole Commission,* 916 F.2d 725, 727 (D.C.Cir.1990). *See also Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988) (District court has the power to dismiss a complaint *sua sponte* for failure to state a claim). Notice, however, should be given to a plaintiff giving the plaintiff an opportunity to be heard prior to dismissal. *Square D Co. v. Niagara Fron-*

*tier Tariff Bureau, Inc.,* 760 F.2d 1347, 1365 (2d Cir.1985); 5A Wright & Miller, Federal Practice and Procedure § 1357 at 301 (1990) ("court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair").

 In this case, Defendant Swearingen is employed by the state along with the other Defendants who brought this motion. As such, for the reasons as stated above, the complaint fails to state a cause of action against him. Further, the complaint as against Swearingen only states that Swearingen was one of Plaintiff's superiors at the Buffalo Psychiatric Center, but it does not allege any action by Swearingen against Plaintiff. Therefore, the court finds that the complaint should be dismissed as against Defendant Swearingen.

 As to Defendant Smith's cross-motion, Smith is a private individual who questioned Plaintiff on June 25, 1990, one year after Plaintiff's resignation as Director of Dental Services, in regards to a workers' compensation investigation. Plaintiff, in his Complaint, stated that "it appeared to plaintiff that Smith was sent by other defendants for the purpose of harassing plaintiff and preventing plaintiff from speaking with regard to defendant Rubina Mirza." *See* Complaint at ¶ 5. However, there is no factual basis provided in the Complaint to support this conclusory allegation. The Complaint, therefore, does not allege with any sufficiency that Smith was acting as an agent for the State Defendants. Smith, acting as a private citizen, can not be sued under 42 U.S.C. § 1983 as any action by him was not made under color of state law. *See Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (a private party may only incur § 1983 liability if his actions were carried out 'under color of state law'). Therefore, the court finds that the Complaint against him should be dismissed on this basis.

This court recommends that this Report and Recommendation should serve to give notice to Plaintiff that the court intends to dismiss the Complaint as against all Defendants, including Swearingen and Smith. Notice to the Plaintiff as to Smith's dismissal

motion was given when served with Smith's Memorandum of Law, and Plaintiff has had ample opportunity to file papers in opposition to Smith's cross-motion. Objections to the dismissal against Swearingen, if any, should be made to the court at the time objections to the Report and Recommendation are made to Judge Arcara, if any objections are so made.

### 3. Cross–Claim of Defendant Smith

The State Defendants have also moved for the dismissal of the cross-claim against them by Defendant Smith for indemnification and/or contribution if Smith were to be found liable to Plaintiff under the Complaint. Based on the court's recommendation above, this motion should be deemed moot, and, therefore, dismissed.

If Judge Arcara does not choose to adopt this court's Report and Recommendation, however, alternatively, I recommend that the State Defendants' motion to dismiss Defendant Smith's cross-claim be GRANTED.

42 U.S.C. § 1983 does not expressly provide for indemnification or for a right to contribution from joint tort-feasors. *Rosado v. New York City Housing Authority,* 827 F.Supp. 179, 183 (S.D.N.Y.1989); *Valdez v. City of Farmington,* 580 F.Supp. 19, 20 (D.N.M.1984). Defendant Smith argues that 42 U.S.C. § 1988 provides that if federal law does not provide a suitable remedy, state law or common law that is not inconsistent with the Constitution or other federal laws may be applied. In this case, Smith seeks to apply New York Civil Procedure Law and Rules Article 14 which provides for contribution from joint tort-feasors.

In cases where the plaintiff directly sued under § 1983 the party from whom contribution or indemnity was sought, courts have uniformly applied federal law to determine whether a right to contribution or indemnity exists among co-defendants. *Holman v. Walls,* 648 F.Supp. 947, 953 n. 5 (D.Del.1986). *See also Langley v. Coughlin,* 715 F.Supp. 522, 551 (S.D.N.Y.1989) (availability of indemnification under the federal civil rights law is a question of federal law). In *Rosado, supra,* the court did not allow for contribution under 42 U.S.C. § 1983. The court held

that liability under N.Y.Civ.Prac.L. & R. § 1401 could not be incorporated into § 1983 pursuant to § 1988 as the basis for the contribution to the defendant would have been the co-defendant's responsibility to the plaintiff under the theory of respondeat superior, which was inconsistent with federal law. *Rosado, supra,* at 183. Additionally, the court held that the alleged injuries caused by the co-defendant were distinct and divisible from the injuries caused by the defendant seeking contribution. *Rosado, supra,* at 183. The court, in disallowing the remedy of contribution, stated that "42 U.S.C. § 1988 serves the purposes of vindicating rights under § 1983, not state laws of contribution." *Rosado, supra,* at 184.

The legislative history of 42 U.S.C. § 1988 provides support for this position, as, in discussing the purpose of § 1988, Congress provided that the Civil Rights Act of 1866, in order to provide support to the civil rights laws, directed courts to use whatever combination of federal, state, and common law were most suitable to enforce the civil rights laws. S.Rep. No. 295, 94th Cong., 1st Sess. (1975) Nowhere in the legislative history of 42 U.S.C. § 1988 and its amendments does Congress imply that state contribution laws for joint tort-feasors should be incorporated into civil rights litigation where, in order to be liable to a plaintiff, a party must have participated in or had personal knowledge of the actions which deprived that plaintiff of his constitutional rights. *See, e.g., Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

The genesis of the provision in § 1988 authorizing federal courts to apply state law in the conduct of federal civil rights cases first appeared in Section 3 of the Civil Rights Act of 1866, 14 Stat. 27 (1866) (the "1866 Act"). Section 1983, itself, was enacted later as the Ku Klux Act of 1871, 16 Stat. 433 (1871) (the "1871 Act"), and specifically provided that actions covered by it were to be governed by the "remedies" established in the 1866 Act. *See* 16 Stat. 433, Sec. 1. The 1866 Act authorized a defendant in a criminal case or a plaintiff in a civil case in state court to remove the proceeding to federal court if their rights to discrimination free justice were hindered by state law. The federal

court was then directed to try the matter by reference to state law as necessary to properly adjudicate the case, except as to any discriminatory aspects.

The historic debates in Congress on both statutes make quite clear that their primary objectives were to establish and protect federal civil rights and thereby remove from the legal system the discrimination created by slavery and its incidents. Senator Trumbull, Chairman of the Senate Judiciary Committee, in discussing the 1866 Act prior to its passage, stated, "the purpose of the bill under consideration is to destroy all these discriminations, and to carry into effect the constitutional [Article XIII] amendment." Cong.Globe, 39th Cong., 1st Sess. 474 (1866). Referring to the clause authorizing the use of state law, which now appears in § 1988, Senator Trumbull stated, "[t]he other provisions of the bill contain the *necessary machinery to give effect to* what are declared to be the rights of all persons in the first section." *Id.* (emphasis added). For example, the right "to make and enforce contracts" and "to sue" were declared, among other enumerated rights, to be federal civil rights by the 1866 Act. As there was no federal law of torts or contracts, the 1866 Act also authorized the federal court to apply state substantive law, as applicable, to facilitate an opportunity to fully litigate, free from illegal discrimination, the specific subject matter of a plaintiff's claim. In the case of a common law tort of negligence, for example, such reference could, therefore, conceivably include impleader and cross-claims, if available, to a defendant on a non-discriminatory basis, as such rules would also have been made available in the state court action which would have proceeded to adjudicate the claim but for an illegal discrimination as outlawed by the 1866 Act, and a transfer of the case to federal court.

Section 1983, however, stems not from the 1866 Act, but, as stated, from the 1871 Act. The purpose of the 1871 Act was to provide, among other remedies enacted to enforce the then recently adopted Fourteenth Amendment, a specific means to recover damages for violations of federally created civil rights. As explained by Senator Trumbull prior to its passage, the 1871 Act "was understood ... to protect persons in the rights which were guaranteed to them by the Constitution and laws of the United States...." Cong. Globe, 42nd Cong., 1st Sess. 579.

As to federal civil rights, the violation of which may be remedied under § 1983, there would be no reason to apply state law unless such application would assist in obtaining damages through a civil action for a denial of a federal civil right. Rules of evidence (until adoption of the Federal Rules of Evidence in 1973), substantive law, such as the torts of false arrest and malicious prosecution, which aid in defining unreasonable seizures and due process violations, and the law of damages, are illustrations of state law which may be considered to advance such purposes, and are today routinely utilized by federal courts in the trial of § 1983 actions. Principles of contribution and indemnity are not of assistance to federal civil rights plaintiffs in pursuing their claims, and may inject issues into the litigation which could interfere with the prompt and orderly trial of such cases.

Even if a state-based claim for contribution or indemnity could arise in the context of a civil rights action under § 1983, the question arises whether it would ever be appropriate, under § 1988, to apply contribution or indemnification principles to such an action. For the reasons as discussed above, it is clear that common law or statutory indemnity and contribution principles serve different interests than the constitutional values sought to be vindicated in a § 1983 action. This does not mean that a defendant may not assert a claim for contribution or indemnity based upon a purely contractual obligation, as such rights do not arise from the wrongful conduct of the indemnitee. However, allowing a claim for contribution or indemnification by reference to state common law or statutory laws under 42 U.S.C. § 1988, is irrelevant to and inconsistent with the purpose and policy of the federal civil rights laws, and is, therefore, specifically excluded from consideration under 42 U.S.C. § 1988.

In this case, Plaintiff alleges that Smith violated his constitutional rights on June 25, 1990, a period of more than one year from

the date of Plaintiff's resignation. The allegation against Smith, for the reasons as stated in Section 2 above, does not state a cognizable cause of action under 42 U.S.C. § 1983, 1985, or 1986. Further, even if this action went to trial and the State Defendants were found liable, they would be liable for their own actions, and not for the actions of Defendant Smith whose actions, as alleged, were "distinct and divisible" from those of the State Defendants. *See Rosado, supra,* at at 183. Under federal civil rights statutes, defendants must be found to have personally violated a plaintiff's civil rights for liability to exist. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Indemnity and contribution will not be allowed in favor of an intentional tortfeasor. *See Langley, supra,* at 551 n. 26; *Valdez v. City of Farmington, supra,* at 21 ("[a] co-defendant *in pari delicto* with a co-defendant generally may not receive indemnity"). Additionally, as noted in *Valdez, supra,* the requirement of personal liability of a civil rights defendant may be inconsistent with the requirement that, to establish a claim for common law indemnity, the claimant must show that his actions were passive. *Valdez, supra,* at 21. Accordingly, there is no basis on which to hold, in this action, the State Defendants liable for indemnification or contribution under § 1401 of the N.Y.Civil Practice Laws & Rules, and the cross-claim alleging such liability should be dismissed. The State Defendants' motion to dismiss the cross-claim of Defendant Smith, therefore, should be GRANTED.

### *CONCLUSION*

Based on the foregoing discussion, I recommend that the State Defendants' motion to dismiss the complaint should be GRANTED. I also recommend that the complaint should be dismissed as against Defendant Swearingen. Defendant Smith's cross-motion to dismiss the complaint should also be GRANTED. Finally, in the alternative, I recommend that the State Defendants' motion to dismiss the cross-claim of Defendant Smith be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to counsel for Plaintiff and Defendants.

SO ORDERED.

DATED: October 25th, 1993.